IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY LYNN, | ) | |
| | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-01284-STA-egb |
| | ) | |
| MICHAEL DONAHUE, | ) | |
| | ) | |
|     Respondent. | ) | |

ORDER DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKIN IN GOOD FAITH,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Johnny Lynn, a Tennessee state prisoner, has filed a *pro se* petition under 28 U.S.C. § 2254 seeking habeas corpus relief ("Petition"). (ECF No. 1.) For the reasons that follow, the Petition is **DENIED**.

## BACKGROUND

The following background summary is drawn from the state court record (ECF Nos. 17, 18, 19) and the state appellate court's recitation of the evidence presented at Lynn's trial. *See State v. Lynn*, No. M2008-00532-CCA-R3-CD, 2009 WL 1812419, at \*1 (Tenn. Crim. App. June 25, 2009), *perm. appeal denied* (June 19, 2012).

**I**. **Trial and Direct Appeal**

In 2007, Lynn was convicted of two counts of rape of a child and two counts of aggravated sexual battery involving his wife's granddaughter. *Id.* At trial, the victim testified that, in 2001 or 2002, when she was ten- or eleven-years-old, Lynn touched her "between her

legs and on her chest, rubbing her on the outside of her clothing." *Id.* She further testified that on a separate occasion the Petitioner ejaculated on her stomach. *Id.* The victim also described a third incident, during which Lynn "'stuck' his penis in her vagina, 'put white stuff in [her], and then licked it out' with his tongue." *Id.* The victim identified "two photographs . . . depicting the Defendant inserting his penis into the victim's vagina." *Id.* "When asked why she did not tell anyone at th[e] time, she responded that the Defendant told her he would kill her." *Id.*

The parties stipulated to testimony of a Polaroid employee who analyzed the frame codes on the photographs. The employee reported that the film of one of the photographs was manufactured on or about May 31, 2000, and two other photographs came from film manufactured on or about April 24, 2002. *Id.* at *2.

A pediatric nurse practitioner, Sue Ross, testified that she had conducted a physical examination of the victim. *Id.* She reported that the examination was normal but that "the vast majority of all exams are normal." *Id.* Ross opined that "the normal results of the victim's examination neither confirmed nor discounted the possibility of sexual contact." *Id.* During cross-examination, Ross "confirmed that the victim did not mention penetration when interviewed." *Id.* On redirect, she affirmed the victim's statements to her that Lynn touched her "'privates' with his hands," her genital area with his mouth, her thigh and abdomen with his penis, and that he ejaculated on her stomach. *Id.* She affirmed on recross that "in the victim's medical history, it was reported that the victim unequivocally stated that the Defendant did not put his penis inside her." *Id.*

Petitioner testified that, at the time of the alleged incidents, he suffered from a rotator cuff injury which required surgery and physical therapy. He denied having any sexual contact with the victim and stated that he believed his wife "had coached [the victim] into making the

allegations." *Id.* The medical director at the hospital at which Lynn had his surgery confirmed that he had surgery and physical therapy during the relevant timeframe, but that he "still had use of his arm during his therapy." *Id.*

The jury found Petitioner guilty as charged. At sentencing, the trial court imposed a ten-year term of imprisonment on each of the aggravated sexual battery convictions, to run concurrently, and a twenty-two-year term of imprisonment on each of the convictions for rape of a child. The twenty-two-year sentences were to run consecutively to each other and to the ten-year sentence, for an effective fifty-four-year sentence. *Id.* at *3-4.

Petitioner advanced four arguments on direct appeal: the trial court improperly charged the jury that the elements of rape of a child could be satisfied by showing a *mens rea* of recklessness (ECF No. 18-10 at 22); the evidence was insufficient to sustain the convictions (*id.* at 27); the trial court improperly sentenced the defendant (*id.* at 30); and the trial court improperly allowed, as expert opinion, the testimony of the nurse practitioner as to what most children understand about sex and their bodies (*id.* at 33-34). The TCCA affirmed the convictions and sentences. *Lynn*, 2009 WL 1812419, at *1.

On September 1, 2009, the Tennessee Supreme Court dismissed Petitioner's initial application for permission to appeal as untimely filed. (ECF No. 18-17 at 5.) Petitioner was granted the right to file a delayed appeal (ECF No. 18-15 at 47), and the Tennessee Supreme Court thereafter denied discretionary review. *Lynn*, 2009 WL 1812419, at *1.

## II. Post-conviction Proceedings

Petitioner filed a *pro se* petition for state post-conviction relief in June 2010. (ECF No. 18-15 at 4.) He alleged that the trial court erred in instructing the jury that the *mens rea* for child rape could include recklessness and in admitting the photographs into evidence. (*Id.* at 6.) He

also claimed that the prosecution failed to give him notice, as required by state statute, of its intention to seek an enhanced sentence. (*Id.*) Lynn further asserted that his trial attorneys rendered ineffective assistance by failing to challenge the jury instructions' references to reckless conduct, failing to challenge admission of the photographs, failing to challenge the State's failure to provide notice of its intention to seek an enhanced sentence, failing to interview witnesses, failing to meet and confer with him when necessary, and failing to investigate and present mitigating evidence at sentencing. (*Id.* at 13-17.)

Appointed counsel filed an amended petition, which raised the following ineffective assistance claims:

1. Trial counsel should have called as witnesses Paul and Debbie Cox, who would have testified about Lynn's wife's statement that she would do anything to harm Petitioner:
2. Trial counsel should not have stipulated to the Polaroid employee's report showing the time frame of the incriminating photographs;
3. Trial counsel should have had Petitioner execute a waiver of *ex post facto* protections which would have enabled him to be sentenced under the June 7, 2005 version of the state sentencing act;
4. Counsel on direct appeal should have timely applied for permission to appeal to the Tennessee Supreme Court, in light of the fact that there was a split of authority on the issue of whether it is error for a trial court to charge a "reckless" *mens rea* to support child rape convictions.

(ECF No. 18-15 at 23-24.)

The post-conviction court held an evidentiary hearing and denied relief. (ECF No. 18-16; ECF No. 18-15 at 64). The TCCA affirmed. *See Lynn v. State*, No. M2012-01877-CCA-R3PC, 2013 WL 5300676, at *1 (Tenn. Crim. App. Sept. 18, 2013).

Petitioner thereafter filed a motion to correct illegal sentence pursuant to Tenn. R. Crim. P. 36.1, arguing that his convictions violated double jeopardy protections. *State v. Lynn*, No. M2015-02413-CCA-R3-CD, 2017 WL 838481, at *1 (Tenn. Crim. App. March 3, 2017). The state court denied the motion and the TCCA affirmed. *Id.*

### III. Federal Habeas Petition

On September 9, 2014, Lynn filed his *pro se* § 2254 Petition, in which he asserts the following claims:

Claim 1: Petitioner's trial attorneys, Trudy Bloodworth and Mark Scruggs, rendered ineffective assistance for the following reasons:

    A. Bloodworth had no experience in this type of case;

    B. Bloodworth refused to interview any witnesses prior to trial or call any witnesses at trial;

    C. Bloodworth failed to take discovery and review discovery with Petitioner;

    D. Bloodworth had been removed as counsel by the judge in April 2008, but on the day of trial appeared and conducted trial, resulting in a conflict of interest;

    E. Bloodworth and Scruggs failed to object to, challenge, or preserve error in the testimony of Sue Ross, who testified as to out-of-court conversations with the victim in violation of the Confrontation Clause;

    F. Bloodworth failed to inform or advise Petitioner about an "ex-post-facto" waiver that would have permitted the trial court to sentence Petitioner under the 2005 amendment to the Tennessee sentencing act and allowed him to receive a lesser sentence;

    G. Bloodworth and Scruggs failed to object, challenge, or preserve for review the State's "trial by ambush" introduction of photographs that Petitioner was not shown until introduced by the State at trial;

    H. Bloodworth and Scruggs failed to object to, challenge, or preserve for review the several inconsistent statements of the victim;

    I. Bloodworth and Scruggs failed to obtain the services of an expert witness to rebut Sue Ross's testimony.

(ECF No. 1 at 4-6.)

Claim 2: Counsel on direct appeal rendered ineffective assistance by failing to raise more than the evidence-sufficiency issue. (*Id.* at 6.)

Claim 3: The trial court erred in admitting "testimonial" hearsay of out-of-court statements by Sue Ross, in violation of the Confrontation Clause.

(*Id.* at 7.)

Claim 4: Post-conviction counsel rendered ineffective assistance by:

> A. Refusing to call witnesses who would corroborate Petitioner's claims and the discrepancies in the evidence presented at trial;

> B. Failing to pursue admissions made by Petitioner's trial attorneys at the post-conviction hearing that they had "messed up" in their representation of Petitioner; and

> C. Abandoning Petitioner's representation without notice and without seeking the court's permission to withdraw.

(*Id.* at 8.)

Claim 5: The evidence was insufficient to support findings of guilt:

> A. As to aggravated sexual battery;

> B. As to rape of a child.

(*Id.* at 9.)

Respondent filed the state court record and an answer to the Petition (ECF Nos. 17, 18, 19, 20), and Lynn filed a Reply (ECF No. 28).

## DISCUSSION

Respondent argues that most of Petitioner's claims are procedurally defaulted, several are non-cognizable, and the remaining are without merit. (ECF No. 20 at 15.) Petitioner alleges that the ineffective assistance of post-conviction counsel should excuse one of the defaults and otherwise asserts that his claims have merit. (ECF No. 1 at 10; ECF No. 28 at 2.) The Court agrees with Respondent that the Petition must be denied in its entirety.

## I.  Legal Standards

### A.  Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the AEDPA.  *See* 28 U.S.C. § 2254.  Under §

2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254 claim challenging the petitioner's custody or sentence on state-law grounds thus fails to state a federal habeas claim. *Moreland v. Bradshaw*, 699 F.3d 908, 926 (6th Cir. 2012) (writ of habeas corpus may not issue "on the basis of a perceived error of state law") (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984)).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, federal habeas relief "may not be granted" unless:

> the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court, [28 U.S.C.] § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); or . . . "involved an unreasonable application of" such law, § 2254(d)(1); or . . . "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A state court's factual determination is not "unreasonable" for purposes of § 2254(d)(2) merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Although the Sixth Circuit has described § 2254(d)(2) as "demanding but not insatiable," it construes the provision in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and

convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quotation marks and citation omitted). State-court factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks omitted)).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion provision is "designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In light of this purpose, the Supreme Court has interpreted the exhaustion provision as requiring not mere "technical" exhaustion, *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), but "proper[]" exhaustion. *Boerckel*, 526 U.S. at 848. A claim is technically exhausted when state remedies are no longer available to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)). Technical exhaustion therefore encompasses not only situations where the petitioner fully presented his claim to the state courts, but also instances where the prisoner did not present his claim to the state courts at all or failed to present it to the highest available court, and the time for doing so has expired. *Boerckel*, 526 U.S. at 848; *Wood v. Ngo*, 548 U.S. 81, 92-93 (2006). If federal habeas courts were generally allowed to review such claims, the exhaustion provision's purpose of giving the state courts the first opportunity to resolve federal constitutional issues would be "utterly defeated." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "To avoid this result, and thus protect the integrity of the federal exhaustion rule," a claim must be "properly"

exhausted, meaning it must be "fairly presented" through "one complete round of the State's established appellate review process." *Boerckel,* 526 U.S. at 845, 848.

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. Broadly speaking, procedural default happens in two ways. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to "fairly present" the claim through "one complete round" of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). *See also Boerckel*, 526 U.S. at 846, 848. Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

It is only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrates that "the court's failure to consider the claim[] will result in a fundamental miscarriage of justice," that a federal court will review the merits of a claim that was procedurally defaulted. *Coleman*, 501 U.S. at 748 (citing *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, --U.S.--, 133 S.Ct. 1911, 1918 (2013); *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). A fundamental

miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B. Ineffective Assistance of Counsel

A claim that the ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on this claim, a petitioner must demonstrate two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' . . . ." *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687, 693).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a court reviews an ineffective assistance claim:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S., at 123, 129 S. Ct. at 1420 [(2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

*Strickland*'s two-part test applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). To meet the deficient performance prong, a petitioner must demonstrate that his appellate counsel "made an objectively unreasonable decision by choosing to raise the other issues" instead of the challenged issued, meaning the challenged issue was "'clearly stronger than issues that counsel did present.'" *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Smith*, 528 U.S. at 285, 288 (2000)). The prejudice prong requires a petitioner to "demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to' raise th[e] issue on appeal, 'he would have prevailed.'" *Id.* (quoting *Smith*, 528 U.S. at 285).

### C. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The *Jackson* standard is deferential to—that is, "gives full play to"—the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id. See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to this already deferential standard. By virtue of the statute's command that federal habeas relief may issue only if the state court's decision is "contrary to," or "an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254 (d)(1), or "based on an unreasonable determination of the facts," *id.* at § 2254(d)(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 132 S. Ct. at 2065.

## II. Claims 1(A) through 1(E) and Claims 1(G) through 1(I)

As noted, Claim 1 and its sub-parts allege that Petitioner's trial attorneys rendered ineffective assistance in nine respects. (ECF No. 1 at 4-5.) With the exception of Claim 1(F), none of the claims are reviewable in this federal habeas proceeding.

Petitioner did not raise the ineffective-assistance arguments he now asserts in Claims 1(A), 1(C), 1(D), 1(E), 1(G), and 1(H) at any level of the post-conviction proceedings. (*See* ECF No. 18-15 at 4-17, 22-24; ECF No. 18-18 at 4.) The time for raising the issues has passed. *See* Tenn Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief); Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . .

failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.")  The claims are thus procedurally defaulted. *See Boerckel*, 526 U.S. at 848.

Claims 1(B) and 1(I) are likewise defaulted.  Claim 1(B) alleges that attorney Bloodworth did not interview or call witnesses, while Claim 1(I) asserts that trial counsel should have hired and called an expert witness to rebut the examining nurse's testimony.  (ECF No.1 at 4-5.)  Petitioner did not pursue these claims through "one complete round of the State's established appellate review process." *Boerckel,* 526 U.S. at 845.  In his *pro se* post-conviction petition, Lynn asserted generally that trial counsel were ineffective by failing to secure witnesses on Petitioner's behalf.  (ECF No. 18-15 at 15.)  In the amended post-conviction petition, which was prepared by appointed counsel, Lynn presented only one witness-related claim: that trial counsel should have called Paul and Debbie Cox as witnesses.  (*Id.* at 23.)  On appeal from denial of post-conviction relief, Petitioner raised no witness-related claims.  (ECF No. 18-18 at 4.)  The time for raising Claims 1(B) and 1(I) to the highest available state court has passed.  *See* Tenn. Code Ann. §§ 40-30-102(a), (c); Tenn. Code Ann. § 40-30-106(g).

Lynn does not assert cause and prejudice to excuse any of the defaults, or actual innocence to overcome them.  (ECF No. 1 at 4-5.)  The claims are therefore not reviewable by this Court.  *See Boerckel*, 526 U.S. at 854.

Claims 1(A), 1(B), 1(C), 1(D), 1(E), 1(G), 1(H), 1(I) are **DISMISSED** as procedurally defaulted. [1]

---

[1] Claims 1(A), 1(B), and 1(C), are also subject to dismissal because they are pled only as general allegations which fail to identify the specific error and the resulting prejudice.  *See* Rule 2(c), Rules Governing Section 2254 Cases in the District Courts ("Habeas Rules") ("The petition must . . . state the facts supporting each ground"); *Jarvis v. Hollway*, No. 3:15-CV-0388, 2016 WL 454777, at *13 (M.D. Tenn. Feb. 4, 2016) (dismissing claim as insufficiently pled under Rule 2(c)).  Additionally, two of the procedurally defaulted claims are "belied by the record."

## III. Claim 1(F)

The Tennessee legislature amended several provisions of the state sentencing statute in 2005. *See* Tenn. Code Ann. § 40-35-210(c)(1) (2005). Petitioner committed his crimes several years prior to the amendment, but was sentenced after it became effective. *Lynn*, 2009 WL 1812419, at *8. In Claim 1(F), Petitioner asserts that his trial attorneys rendered ineffective assistance by failing to inform him that he could sign an *ex post facto* waiver that would have permitted the trial court to sentence him under the 2005 amendments. (ECF No. 1 at 5.) He points out that attorney Bloodworth admitted at the post-conviction hearing that she had not told him of the waiver. (*Id.* at 4.) Petitioner litigated this claim in the post-conviction proceeding (ECF No. 18-15 at 23) and raised it on appeal from denial of post-conviction relief (ECF No. 18-18 at 4.) The TCCA affirmed the post-conviction court's determination that counsel had not been ineffective. *See Lynn*, 2013 WL 5300676 at *4. The claim was therefore properly exhausted and is thus reviewable in this federal habeas proceeding under AEDPA's deferential standards. *See Boerckel*, 526 U.S. at 848.

In addressing Lynn's ineffective assistance claim, the TCCA expressly applied *Strickland*'s standards to the evidence adduced at the post-conviction hearing. *See Lynn*, 2013 WL 5300676, at *3. The court found that, although the record suggested that counsel's failure to advise Petitioner about his waiver rights may have been deficient, Petitioner had failed to establish that he was prejudiced by counsel's conduct:

> "[W]e initially note that the Petitioner did not testify at the evidentiary hearing and, therefore, never stated that he would have waived his ex post facto

---

*Goff v. Bagley*, 601 F.3d 445, 464 n. 7 (6th Cir. 2010). Contrary to Petitioner's allegation in Claim 1(D), the court did not remove attorney Bloodworth prior to trial. (ECF No. 18-4 at 1.) Claim 1(G)'s allegations fail because the State, in fact, provided the photographs in discovery two months before trial (ECF No. 18-4 at 6) and counsel objected to their admission into evidence (ECF No. 18-4 at 6-13).

protections and agreed to be sentenced pursuant to the 2005 amendments to the Sentencing Act. In any event, the post-conviction court reviewed the trial and sentencing hearing transcripts and concluded that three additional enhancement factors were applicable to the Petitioner's sentences. The Petitioner does not contest that conclusion. The post-conviction court also concluded that the trial court's negative comments concerning the Petitioner's character and lack of potential for rehabilitation would have resulted in a lengthier sentence. Therefore, the post-conviction court found that although trial counsel "demonstrate[d] some level of deficiency," the Petitioner failed to established prejudice. We agree with the post-conviction court and affirm the denial of the petition for post-conviction relief.

*Id.* at *4.

Petitioner has not shown that he is entitled to relief under the AEDPA on Claim 1(F). First, the TCCA's ineffective-assistance determination is not "contrary to" clearly established Supreme Court law, 28 U.S.C. § 2254(d)(1), because the court applied *Strickland*'s standards to the facts before it. A "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406.

Second, the state appellate court's holding is not based on an unreasonable determination of the facts. *See* 28 U.S.C. §§ 2254(d)(2). The TCCA concluded that there was no evidence of prejudice and that sentencing under the 2005 amendment would have resulted in a lengthier—not shorter—sentence. *Lynn*, 2013 WL 5300676, at *4. Those determinations constitute factual findings, which are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. *See e.g.*, *Harris v. Carlton*, No. 2:05-CV-24, 2007 WL 776517, at *11–12 (E.D. Tenn. Mar. 9, 2007) (holding "state appellate court's no-evidence determination constitute[d] a finding of fact" which was entitled to AEDPA's presumption of correctness). Petitioner has not identified any clear and convincing contrary evidence.

Finally, the TCCA's ruling that counsel was not ineffective was not based on an unreasonable application of *Strickland*'s standards to the facts adduced at the post-conviction

hearing. *See* 28 U.S.C. § 2254(d)(1). In the absence of evidence that Petitioner was prejudiced by his attorney's failure to advise him about his waiver rights, the TCCA's determination that counsel did not render ineffective assistance is objectively reasonable. *See e.g. Harris*, 2007 WL 776517, at *9 (holding that "the state court did not unreasonably apply *Strickland* when it refused to grant petitioner relief . . . based on its conclusion that he had offered no proof of prejudice").

Because the TCCA's ineffective assistance determination is not contrary to clearly established Supreme Court law, based on an unreasonable determination of the facts, or the result of an unreasonable application of clearly established law to the facts, Claim 1(F) is **DENIED** as lacking merit.

## IV. Claim 2

Petitioner alleges that that attorney Bloodworth rendered ineffective assistance on direct appeal by raising only "one issue . . . that of Sufficiency of the Evidence." (ECF No. 1 at 6.) He claims he was prejudiced by Bloodworth's conduct because she had a "conflict of interest in . . . appearing as Counsel on Appeal" after he had filed a *pro se* motion to have her removed as his trial counsel. (*Id.*) The claim must be denied for several reasons.

First, the claim was not raised in Petitioner's *pro se* post-conviction petition (ECF No. 18-15 at 4), his amended post-conviction petition (*id.* at 22), or on appeal from denial of post-conviction relief (ECF No. 18-18 at 4.) Because the time for raising the issue in the state courts has passed, Lynn has procedurally defaulted the claim. He does not allege cause and prejudice to excuse the default, or actual innocence to overcome it. (*See* ECF No. 1 at 6.) The claim is therefore unreviewable in this federal habeas proceeding. *See Boerckel*, 526 U.S. at 854.

Even if Claim 2 were not procedurally defaulted, it would fail on the merits. The central allegation is that appellate counsel only raised the evidence-sufficiency issue on direct appeal. That allegation is "belied by the record." *Goff*, 601 F.3d at 464 n. 7. Counsel, in fact, raised a total of four issues. (ECF No. 18-10 at 5.) Petitioner also does not explain what additional issues counsel should have raised, or why they were "clearly stronger than [the] issues that counsel did present." *Smith*, 528 U.S. at 288.

The Court therefore **DISMISSES** Claim 2 as procedurally defaulted, and finds that it is without merit in any event.

## V. Claim 3

Petitioner asserts that the trial court erred in admitting hearsay statements by Sue Ross, the examining nurse practitioner. (ECF No. 1 at 7.) The claim must be dismissed because Lynn does not specify which statements by Ross he believes constitute inadmissible hearsay, or explain the prejudicial impact of the statements. *See* Habeas Rule 2(c) ("The petition must . . . state the facts supporting each ground"); *Thompson v. Bradshaw*, No. 1:04CV2204, 2007 WL 2080454, at *18 (N.D. Ohio July 16, 2007) (rejecting federal habeas claim where petitioner failed to identify the alleged hearsay statements or explain how he was prejudiced by their admission).

Claim 3 is also not reviewable by this Court. Petitioner did not raise the claim on direct appeal (ECF No. 18-10 at 5), and the time for doing so has passed. *See* Tenn Code Ann. §§ 40-30-102(a), (c); Tenn. Code Ann. § 40-30-106(g). Petitioner has thus procedurally defaulted the claim. *See Boerckel*, 526 U.S. at 848.

Petitioner asserts that the default should be excused because attorney Bloodworth "refused to brief" the issue on direct appeal. (ECF No. 1 at 7.) The Court liberally construes the

Petition as also asserting that post-conviction counsel was ineffective by failing to challenge appellate counsel's alleged ineffectiveness in that regard. (ECF No. 1 at 10.) The Court finds that the default of Claim 3 is not excused.

The ineffective assistance of appellate counsel can constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). However, an "ineffective-assistance-of-counsel claim asserted as cause for [a] procedural default . . . can itself be procedurally defaulted . . . ." *Id.*. Here, Petitioner procedurally defaulted a claim of appellate counsel ineffectiveness by not presenting it to any state court within the time allowed for doing so.[2]

Additionally, Petitioner cannot rely on the alleged ineffective assistance of post-conviction counsel as cause to excuse the default. Under *Martinez*, the ineffective assistance of post-conviction counsel may be cause for a procedural default of a claim of ineffective assistance of *trial* counsel. 132 S. Ct. at 1315. The Supreme Court recently refused to extend *Martinez* to claims alleging the ineffective assistance of appellate counsel. *See Davila v. Davis*, --U.S.--, 137 S.Ct. 2058 (2017). In *Davila*, the Court held that the ineffective assistance of post-conviction counsel does not provide cause for the procedural default of an ineffective-assistance-of-appellate-counsel claim. *Id.* at 2065.

Claim 3 is therefore **DISMISSED** as insufficiently pled and procedurally defaulted.

## VI. Claim 4

Petitioner asserts that his post-conviction counsel rendered ineffective assistance by refusing to call certain witnesses (Claim 4A), failing "to pursue" admissions by his trial attorneys that they had "messed up" (Claim 4B), and, "after the conclusion of appellate

---

[2] The sole ineffective-assistance-of–appellate-counsel claim raised in the post-conviction proceeding was that "counsel on direct appeal should have timely applied for permission to appeal to the Tennessee Supreme Court." (ECF No. 18-15 at 23-24.) The claim was rendered moot when the post-conviction court granted Petitioner the right to file a delayed appeal to the Tennessee Supreme Court. (ECF No. 18-15 at23-24, 45.)

review," "abandoning his representation of Petitioner" "without notice and without seeking the court's permission to withdraw" (Claim 4C).  (ECF No. 1 at 8.)

Under § 2254(i), the ineffective assistance of post-conviction counsel "shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i); *see also Coleman*, 501 U.S. at 752 (there is no constitutional right to post-conviction counsel); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (same).  Claims 4(A), 4(B), and 4(C) are therefore **DISMISSED** as non-cognizable in this habeas proceeding.[3]

## VII.  Claim 5

Petitioner insists that the evidence submitted at trial was insufficient to convict him of aggravated sexual assault (Claim 5(A)) and rape of a child (Claim 5(B)).  (ECF No. 1 at 9.)  In support, he argues that (1) the victim's statements contained inconsistencies, (2) the medical examination of the victim was "normal," with the hymen intact and an absence of "scars, tears, or damage"; (3) the victim told the examining nurse practitioner, Sue Ross, that "she had not been penetrated"; and (4) the photographs admitted into evidence "did not clearly show [P]etitioner nor [the] alleged victim, and . . . allegedly depicted scenes that occurred at times many months apart, but one person . . . was wearing the same shirt."  (*Id.*)  The Court finds that two portions of the claim are procedurally defaulted and the remainder is without merit.

First, all of Claim 5(A) is procedurally defaulted.  On direct appeal, Petitioner challenged the sufficiency of the evidence to convict him of aggravated sexual battery and rape of a child.  (ECF No. 18-10 at 5.)  As the TCCA noted, however, the "entire [appellate] argument center[ed] around the lack of sexual penetration, a required element of child rape." *Lynn*, 2009 WL 1812419 at *6 n. 3.  The appellate court therefore refused to consider whether

---

[3]  Petitioner also does not provide legal authority for the proposition that counsel had a duty to continue representing him after the conclusion of post-conviction appellate review.

the evidence was sufficient to convict Lynn of aggravated sexual battery. *Id.*

In Tennessee, a party waives an issue on appeal by failing to support the claim with argument. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Tennessee's waiver rule is an independent and adequate state procedural ground. *Mathis v. Colson*, 528 F. App'x 470, 478 (6th Cir. 2013). Thus, absent a showing of cause and prejudice or actual innocence, a state appellate court's application of the rule will bar federal habeas review of a claim. *See id.* (holding that federal habeas review of petitioner's claim was barred where Tennessee appellate court had refused to decide the merits of the claim on ground that it was not supported by argument or citation to authority). Here, Petitioner does not assert cause and prejudice to excuse the default or actual innocence to overcome it. (ECF No. 1 at 9.) Claim 5(A) is thus not reviewable by this Court. *See Boerckel*, 526 U.S. at 854.

Second, a portion of Claim 5(B) is procedurally defaulted. On direct appeal, Petitioner advanced the following reasons why the evidence was insufficient to convict him of rape of a child: the medical examination of the victim did not reveal any injuries, the victim's statements to the examining nurse were inconsistent with her testimony at trial, and the victim "unequivocally" told the nurse that the defendant had not penetrated her. (ECF No. 18-10 at 29-30.) Lynn did not argue to the TCCA, as he does here, that the photographs do not "clearly show" him or the victim as the individuals depicted and do not support the prosecution's claim that the scenes showed different incidents. (ECF No. 1 at 9). Because the time for presenting the argument to the state courts has passed, that portion of Claim 5(B) is procedurally defaulted. *See Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) ("[A]s our precedents make clear, 'the

doctrine of exhaustion requires that the same claim *under the same theory* be presented to the state courts before raising it in a federal habeas petition.'") (emphasis in original) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009). Petitioner does not assert cause and prejudice to excuse the default or actual innocence to overcome it. (*See* ECF No. 1 at 9.)

In all other respects, Claim 5(B) was exhausted in the state courts. *See Lynn*, 2009 WL 1812419, at *7. The TCCA's evidence-sufficiency ruling is thus reviewable by this Court under the AEDPA's deferential standards.

In addressing the claim, the TCCA first described the legal standards that apply in an evidence-sufficiency analysis:

> This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Hall,* 8 S.W.3d 593, 599 (Tenn.1999).

*Id.* at *6.

After applying those standards to the facts adduced at Petitioner's trial, the appellate court held that "[t]he Defendant's sufficiency argument fails to gain him relief." *Id.* at *7. The court explained:

> The offense of which the Defendant was convicted, child rape, requires the prosecution to prove the element of "sexual penetration." Tenn.Code Ann. §§ 39–13–503, –522. Our criminal code defines "sexual penetration" for the purposes of these offenses, in relevant part, as "any ... intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body...." Tenn.Code Ann. § 39–13–501(7).
>
> . . . The victim and the Defendant testified that the victim spent weekends and summer vacation at the Defendant's home and that, at times, they were alone. The medical expert, pediatric nurse practitioner Sue Ross, testified that, though the results of the medical examinations were normal, penetration could have occurred consistent with these results. In fact, she stated that clear, incontrovertible

evidence of penetration into the vagina is only present in three to five percent of cases. Our supreme court has recognized that "[t]here is ... 'sexual penetration' in a legal sense if there is the slightest penetration of the sexual organ of the female.... It is not necessary that the vagina be entered or that the hyman be ruptured; the entering of the vulva or labia is sufficient." *Hart v. State,* 21 S.W.3d 901, 905 (Tenn.2000); *see also State v. Bowles,* 52 S.W.3d 69, 74 (Tenn.2001). Moreover, the photographs provide circumstantial evidence pointing to the Defendant's rape of the victim. "The occurrence of penetration, even though penetration is statutorily defined, is a question of fact." *Bowles,* 52 S.W.3d at 74.

After considering all the evidence in the light most favorable to the State, we determine that the Defendant has failed to demonstrate that the jury was presented with insufficient evidence at trial for any reasonable trier of fact to determine that he sexually penetrated the victim. *See, e.g., State v. Charles L. Williams,* No. M2005–00836–CCA–R3–CD, 2006 WL 3431920, at * 15–17 (Tenn.Crim.App., Nashville, Nov. 29, 2006). Accordingly, we conclude that the record contains sufficient evidence to support the jury's conclusion that the Defendant is guilty beyond a reasonable doubt of child rape.

*Lynn*, 2009 WL 1812419, at *7.

The TCCA's decision easily passes muster under the AEDPA's deferential review standards. First, the court's determination that the evidence was sufficient to convict Lynn of rape of a child was not "contrary to" *Jackson.* 28 U.S.C. § 2254(d)(1). The TCCA correctly identified the evidence-sufficiency standards set forth in *Jackson* and applied them to the facts. *See Lynn*, 2009 WL 1812419, at *6. As noted, a "state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406.

The decision was also not based on an unreasonable determination of the facts or an unreasonable application of *Jackson*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). The victim testified that the she and the defendant were sometimes alone at the defendant's house and she described conduct by the defendant that qualifies as "penetration" under the state criminal code *See Lynn*, 2009 WL 1812419, at *1-2. Despite the victim's earlier, inconsistent statements to the examining nurse, the jury implicitly found her in-court testimony to be credible.

The TCCA appropriately refused to disturb the jury's credibility determination.  *See Jackson* 433 U.S. at 319 (the reviewing court should "give full play to" the role of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.").  In addition, as the TCCA noted, the jury implicitly credited the nurse practitioner's statement that in the vast majority of cases of vaginal penetration, there is no injury.  *Lynn*, 2009 WL 1812419, at *2, 7.  Finally, the photographs "provided circumstantial evidence" that Petitioner raped the victim.  *Id.* at *7.

In sum, the TCCA's evidence-sufficiency determination is not contrary to clearly established Supreme Court law, based on an unreasonable determination of the facts, or the result of an unreasonable application of clearly established law to the facts.  Claim 5(B) is therefore without merit and is **DENIED**.

For all of these reasons, the Petition is **DENIED**.  Judgment shall be **ENTERED** for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253 (c) (2) & (3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)).  If the district court rejects a claim on a procedural ground, the petitioner must show "that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478.

In this case, reasonable jurists would not debate the correctness of the Court's procedural rulings or its denials of certain claims on the merits.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: November 30, 2017.